## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID CHERNICOFF | : | 1:14-cv-1990 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| PINNACLE HEALTH MEDICAL | : | |
| SERVICES | : | |
| | : | |
| Defendant, | : | |

## MEMORANDUM & ORDER

### September 26, 2016

Presently before the Court is Defendant Pinnacle Health Medical Services'
("Pinnacle") Motion for Summary Judgment ("the Motion"). (Doc. 21). Plaintiff
David Chernicoff ("Chernicoff") filed a Complaint (Doc. 1, pages 7-21) in the
Court of Common Pleas of Dauphin County, Pennsylvania, on September 19,
2014. Pinnacle filed a Notice of Removal to this Court on October 14, 2014. (Doc.
1). Chernicoff brings common law claims of fraudulent misrepresentation,
fraudulent inducement, and negligent misrepresentation, and an age discrimination
claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

("ADEA").[1] The Motion has been fully briefed (Docs. 22, 31, 33) and is thus ripe for our review. For the reasons that follow, the Motion shall be granted in full.

## I. BACKGROUND

Plaintiff David Chernicoff is an oncologist. (Doc. 23, ¶ 5). In 2011, Chernicoff was employed by Carlisle Hospital, but was dissatisfied by the lack of a busy caseload. (*Id.*, at ¶ 6). In December 2011, a colleague placed Chernicoff in touch with Dana Kellis, the Chief Medical Officer of Pinnacle Health Services, to discuss the possibility of working with Pinnacle's new Cancer Center. (*Id.*, at ¶ 7, 8).

Pinnacle opened the Pinnacle Health Cancer Center at Community General Hospital in May 2011. (*Id.*, at ¶ 1). The Cancer Center was staffed by doctors Roy Williams and Roland Alexander, with Pinnacle planning to phase five or six more physicians into the practice over time. (*Id.*, at ¶ 2). In August 2011, Alexander died, leaving Williams as the sole Pinnacle oncologist with a patient load of approximately 1,500 individuals. (*Id.*, at ¶ 4). When Chernicoff and Kellis

---

[1] While Chernicoff mentions the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), in the introductory paragraph to his Complaint (Doc. 1, page 7), he does not invoke the statute any time thereafter. In the briefs accompanying with this Motion, both parties treat the matter as if Chernicoff has alleged a violation of the PHRA along with the violation of the ADEA in Count III. Any possible PHRA claim is considered to be disposed of with the ADEA claim, as the analysis under the two statutes is the same. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.").

connected in December 2011, Pinnacle had an immediate need for another physician. (*Id*., at ¶ 10).

In February 2012, Chernicoff, Kellis, and Janice Dunsavage, the Director of Pharmacy at Pinnacle, met to discuss the possibility of Chernicoff working for the Pinnacle Cancer Center. (*Id*., at ¶ 8). During this meeting, Chernicoff, who was then sixty-five years old, stated that he planned to work for another five years. (*Id*., at ¶ 12). Chernicoff alleges that he told Pinnacle representatives this information after Kellis asked how many more years he planned to work. (Doc. 30, ¶ 12). There was no discussion about a five year employment contract. (Doc. 23, ¶ 12). No formal offer of employment was made to Chernicoff at this meeting. (*Id*., at ¶ 13).

Following the meeting with Kellis and Dunsavage, Chernicoff received and signed a Physician Employment Agreement with Pinnacle dated March 26, 2012. (*Id.*, at ¶ 16). The agreement provided for a two year term of employment from April 1, 2012. (Doc. 24, page 115). Further, the agreement stated that either party could terminate the employment without cause by giving ninety days written notice. (*Id.*, at page 116). The agreement contained a merger cause, providing that it "contains the entire agreement of the parties, [and] supersedes any prior or existing agreements of the parties." (*Id* . at page 117). Chernicoff negotiated the early release from his contract with Carlisle Hospital on March 31, 2012, and began work at Pinnacle on April 2, 2012. (Doc. 23, ¶ 18, 19).

In a Physician Employment Agreement dated January 26, 2012, Pinnacle hired Doctor Hassan Sheikh to serve as a hospitalist at Pinnacle Health Hospitals. (*Id.*, at ¶ 3). Sheikh was finishing a fellowship at another hospital, and did not start at Pinnacle until July 1, 2012, after Chernicoff had already started his employment at the Cancer Center. (*Id.*).

Upon starting his employment with Pinnacle, Chernicoff experienced several problems: Chernicoff was displeased with certain aspects of his employment with Pinnacle, and other employees at Pinnacle were displeased with certain aspects of Chernicoff. The parties agree that Chernicoff's orientation was slow, he was not provided with an office or a personalized lab coat, and that his arrival to the practice was not marketed, but Pinnacle disputes Chernicoff's entitlement to those things. (Doc. 33, p. 13). Chernicoff admitted to being told by Kellis that some patients objected to him. (*Id.*, at 8). He also admitted to being aware that a patient left the practice due to his care. (*Id.*). Finally, Chernicoff admits to arriving to work past 9 a.m. on two occasions, though claims that he was never told of an official start time. (Doc. 30, ¶ 21; Doc. 33, page 7).

Pinnacle alleges a host of other problems with Chernicoff that he disputes. Evidence of these problems with Chernicoff is derived from the deposition of his coworker Williams. Williams testified that he received complaints about Chernicoff's work performance, that Chernicoff was late in arriving to the Cancer

Center, which delays chemotherapy treatment, bragged about making patients wait to see him, and that Chernicoff harassed the nurses to hurry treatments because he wanted to leave. (Doc. 23, ¶ 20-23, 31). Williams further testified that many patients refused to see Chernicoff after their initial visit and asked to be transferred to another physician. (*Id*., at ¶ 23). Williams testified that other doctors at Pinnacle Health Services were concerned with a number of medical orders that Chernicoff executed, and that Chernicoff ordered an aggressive and toxic combination of chemotherapy for one patient. (*Id*., at ¶ 24, 27). Further, Williams stated that Chernicoff improperly referred a calling patient to the emergency room instead of the Cancer Care office, and that Chernicoff instructed a patient to take Tylenol for a headache rather than recognizing her three brain metastasises. (*Id*. at ¶ 25, 28). Williams alleges that he told Chernicoff about a patient complaint of Chernicoff's strong odor of cigars, to which he replied, "I've been waiting for that my whole career." (*Id*., at ¶ 26). Finally, Williams testified that Chernicoff had a negative attitude, appeared frustrated with having to do his work duties, and was rude and hostile with staff, physicians, patients and their families. (*Id.*, at ¶ 29, 31).

In response, Chernicoff states that he was never made aware of any of the alleged concerns that Williams reports, did not state the remark about the cigar smell, did not present with a poor attitude, nor did he ever do anything improper as a doctor for Pinnacle. (Doc. 30, ¶ 20, 22-31). Instead, Chernicoff alleges that Williams improperly asserted himself as a supervisor of Chernicoff and became

critical of his work, when his employment agreement provided that he was to report to Kellis. (Doc. 31, page 5).

Chernicoff was terminated from Pinnacle's employ on September 24, 2012, pursuant to the "without cause" provision of the employment agreement, and continued to receive pay for ninety days. (Doc. 23, ¶ 32-33). Chernicoff alleges that, at the meeting in which Kellis and Williams informed Chernicoff of his termination, Kellis stated that she did not question his medical judgment and performance. (Doc. 30, page 9). Pinnacle alleges that the decision to terminate Chernicoff was due to his poor job performance and attitude. (Doc. 23, ¶ 32).

In September 2012, Pinnacle was actively recruiting new physicians because of the possibility of "Dr. Chernicoff not working out." (Doc. 30-2, page 32). On September 18, 2012, Dr. Porselvi Chockalingam verbally committed to joining the Pinnacle team and started in January 2013. (*Id.*, at page 31). Chernicoff alleges that he was replaced by either Sheikh, who signed an employment agreement over a month before Chernicoff, or by Chockalingam. (Doc. 31, page 16). Chernicoff refers to these two as "younger oncologists," but their ages have not been established. (*Id.*).

Both parties agree that no made reference was made to Chernicoff about his age throughout his employ with Pinnacle. (Doc. 23, ¶ 35). The parties also agree that, from 2011-2013, Pinnacle employed 208 physicians, at least 107 of which

were over the age of forty (40) as of 2011, and twelve of which were older than Chernicoff. (Doc. 23, ¶ 36).

Pinnacle filed the instant Motion for Summary Judgment (Doc. 21) on March 1, 2016. The Motion will be granted for the reasons that follow.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a

genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

Count I of Chernicoff's Complaint alleges both fraudulent misrepresentation and fraud in the inducement, and Count II alleges negligent misrepresentation. These claims both arise out of Chernicoff's expectations of his employment with Pinnacle and will be discussed together. Count III alleges that Pinnacle terminated Chernicoff's employment because of his age, in violation of the ADEA.

## A. Fraudulent Misrepresentation, Negligent Misrepresentation, and Fraudulent Inducement

Chernicoff alleges fraudulent misrepresentation, negligent misrepresentation, and fraudulent inducement claims against Pinnacle based on eleven alleged material misrepresentations made by Kellis and Dunsavage at their meeting to discuss the possibility of Chernicoff working for Pinnacle. (Doc. 1, pages 9-10).

Those "material misrepresentations" include: (a) "[t]hat Pinnacle was experiencing a physician shortage in its Medical Oncology Associates group; (b) "[t]hat Pinnacle's Medical Oncology Associates group had greater patient demand than Pinnacle could meet with the one physician then assigned to that group"; (c) "[t]hat Dr. Chernicoff's experience and skills would be a perfect fit with the Medical Oncology Associates group; (d) "[t]hat Pinnacle wanted Dr. Chernicoff to work in its Medical Oncology group"; (e) "[t]hat Pinnacle wanted Dr. Chernicoff to begin working in the Medical Oncology Associates group immediately"; (f) "[t]hat Pinnacle wished to induce Dr. Chernicoff to leave his then-employment with CRMC"; (g) "that employment with Pinnacle would be more valuable to him than would remaining in his employment with CRMC"; (h) "[t]hat Pinnacle would reasonably support Dr. Chernicoff so that he could maintain ongoing employment with Pinnacle"; (i) "[t]hat Pinnacle could not wait for Dr. Chernicoff to defer his start until after a preplanned trip to England in September 2012, and requested that

he begin in April 2012"; (j) "[t]hat Dr. Chernicoff would be employed by Pinnacle for a reasonable period of time"; (k) "[t]hat Dr. Chernicoff's plan, which was to work until age 70, was consistent with Pinnacle's plan for Dr. Chernicoff." (*Id.*).

Fraudulent misrepresentation,[2] negligent misrepresentation,[3] and fraudulent inducement[4] all require proof of a misrepresentation of material fact. Chernicoff has produced no evidence to indicate that alleged misrepresentations (a), (b), (c), (d), (e), (f), or (i) were false. Chernicoff has similarly provided no evidence that statement (j), that Chernicoff would be employed by Pinnacle for a reasonable period of time, is false. Pinnacle and Chernicoff entered into an employment agreement that provided for a term of two years, as well as a without-cause termination provision (Doc. 24, page 116), and Chernicoff was employed by

---

[2] "Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: (1) **a representation**; (2) **which is material to the transaction at hand**; (3) **made falsely**, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Tingley-Kelley v. Trustees of Univ. of Pennsylvania*, 677 F. Supp. 2d 764, 782 (E.D. Pa. 2010).

[3] "In order to succeed on a claim of negligent misrepresentation under Pennsylvania law, plaintiff must prove four elements by a preponderance of the evidence: (1) **a misrepresentation of a material fact**; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 377 (E.D. Pa. 1998).

[4] "Pennsylvania law requires plaintiffs to prove the following elements in a claim for fraud in the inducement: (1) **a representation**; (2) **material** to the transaction at hand; (3) **made falsely** with knowledge of its falsity or recklessness as to its truth; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury." *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 198 (E.D. Pa. 2015).

Pinnacle for four months. (Doc. 23, ¶ 19, 33). Thus, those statements cannot be the basis of these claims.

Statement (g) represents an opinion of Pinnacle that working for it would be more valuable than working for Carlisle hospital, rather than a factual allegation, and thus similarly cannot predicate these claims of a material misrepresentation. In addition, Chernicoff testified that he did not recall any Pinnacle representative telling him that employment with Pinnacle would be more valuable than Carlisle. (Doc. 24, page 76).

This leaves statements (h) and (k) as possible sources for Chernicoff's claims. Pinnacle argues in the instant Motion that Chernicoff has not presented evidence in support of these representations from which a jury could reasonably conclude that Pinnacle committed fraudulent or negligent misrepresentation, or fraudulently induced Chernicoff into a contract with Pinnacle. We agree.

The only evidence that Pinnacle stated it would reasonably support Chernicoff in his employment, statement (h), comes from Chernicoff's deposition where he stated that this was only represented "in general terms." (*Id*.). As for statement (k), Chernicoff admits that Pinnacle never represented that it would offer him a five year contract or a promise of employment until age seventy. (*Id*. at page 77). His only testimony regarding this discussion was that Pinnacle representatives

asked him what his "plan was", Chernicoff stated that he planned to work until he was seventy, and that a Pinnacle representative stated "that was fine." (*Id*.).

Chernicoff cannot meet his burden of showing the necessary element of a material misrepresentation when his only evidence is his testimony that Pinnacle stated in "general terms" that it would support his employment, and that Pinnacle responded "that was fine" to Chernicoff's statement of his retirement age. Chernicoff's brief and vague testimony regarding these representations is not enough to allow a reasonable juror to find that Pinnacle representatives misrepresented a material fact, much less the subsequent element of knowledge of its falsity or reckless disregard for the truth. The Court need not discuss the inadequacies of meeting the subsequent elements of each of these claims because this threshold requirement has not been met. Thus, Chernicoff's claims for fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation shall be denied.

## B. Count III- Age Discrimination

In support of their Motion for Summary Judgment, Pinnacle argues that Chernicoff has not made out a prima facie claim of age discrimination under the ADEA. Pinnacle further argues that, even if Chernicoff has made out a prima facie case, Chernicoff has not presented evidence to permit a jury to find that Pinnacle's non-discriminatory reason for his termination was a pretext. (Doc. 22, page 16).

The parties agree that Chernicoff's ADEA claim should be examined under the *McDonnell Douglas* burden shifting framework as laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The *McDonnell Douglas* framework is described in detail by the Third Circuit in *Jones v. School District of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).  It proceeds in three stages.

> First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  While the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Our experience is that most cases turn on the third stage, *i.e.*, can the plaintiff establish pretext.

*Jones*, 198 F.3d at 410 (internal citations and quotations omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). We analyze Chernicoff's claims of age discrimination under this framework below.

### i.  Whether Chernicoff has made out a prima facie claim of discrimination under the ADEA

In order to establish a prima facie case of age discrimination under the ADEA, Chernicoff must show that he "(1) was a member of a protected class (i.e. he or she was forty years of age or older); (2) was qualified for the position at

issue; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently younger person, raising an inference of age discrimination." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002).

The parties do not dispute that Chernicoff has established the first, second, and third elements of a prima facie case. (Doc. 22, page 13). However, Pinnacle alleges that Chernicoff has failed to produce evidence to show that he was replaced by a sufficiently younger person. (*Id.*).

Chernicoff argues that he was replaced by either doctors Sheikh or Chockalingam. (Doc. 31, page 16). Chernicoff has not shown the age either of these doctors, but instead refers to them as the "younger oncologists." (*Id.*). In fact, Chockalingam was not even mentioned in Chernicoff's Complaint.

Chernicoff has not produced any evidence that would lead a jury to believe that he was replaced by Sheikh. The evidence shows that Sheikh signed an employment agreement with Pinnacle on February 2, 2012, almost two months before Chernicoff signed his employment agreement. (Doc. 22, page 13). While Chernicoff alleges that he was hired to train Sheikh and ultimately be replaced by him, he has not produced any evidence in support of this contention. The Court agrees with Pinnacle and finds that Sheikh's employment cannot be the basis for the third element of Chernicoff's prima facie case of discrimination because there is no evidence that he was Chernicoff's replacement.

The assertion that Chockalingam was hired to replace Chernicoff rests on stronger footing. Chernicoff has pointed to an email where Pinnacle representatives reveal that recruiting efforts for new physicians were continuing on the possibility of Chernicoff "not working out." (Doc. 30-2, page 32). On September 18, 2012, Dr. Porselvi Chockalingam verbally committed to joining the Pinnacle team (*Id.*, at page 31), just six days before Chernicoff's termination. (Doc. 23, ¶ 32-33). However, as Pinnacle pointed out, nowhere in the record is the age of Chockalingam established. Chernicoff is hard-pressed to establish that he was replaced by a sufficiently younger person without first establishing the age of his replacement.

Because we have concluded that Chernicoff's ADEA claim fails on the third prong of the *McDonnell* framework anyway, and for purposes of completeness, the Court will continue on the assumption that Chernicoff has established a prima facie case.

### ii. Whether Chernicoff has shown that Pinnacle's articulated legitimate reason for his adverse employment action was a pretext

Once a plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory reason for the adverse employment action at issue." *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999).

Pinnacle has offered several reasons for the decision to terminate Chernicoff. These reasons are articulated in the form of several anecdotal references to Chernicoff's poor work performance and poor attitude towards his employment, coworkers and patients. (Doc. 22, pages 16-20).

As a threshold matter, Chernicoff argues that many of the offered reasons for termination rely on inadmissible hearsay that cannot be considered on a motion for summary judgment. (Doc. 31, page 17). Chernicoff is correct that "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). However, the Court need not delve into each proffered reason for termination and decide whether they constitute inadmissible hearsay in this case because Chernicoff's admissions alone constitute support for Pinnacle's legitimate non-discriminatory reasons for his termination.

Throughout his deposition testimony, Chernicoff admits to several actions that support Pinnacle's contention that Chernicoff was a poor worker and presented a poor attitude. Chernicoff admitted that he "plain out forgot" to arrive to work at 8 a.m. one morning and arrived late. (Doc. 22, page 21). On another occasion, Chernicoff admits to responding to Williams in an angry manner after Williams asked the receptionist to page Chernicoff and instruct him to come to work at a certain time. (*Id*.). Concerning patient interactions, Chernicoff admitted that Kellis

told him that some patients objected to his care, and even admitted to causing a patient to leave the practice's care because of his sudden change of her chemotherapy plan. (*Id*.). Further, he admits that a patient complained about his odor of cigars. (*Id*., at page 22). Even when considering only these issues that Chernicoff has admitted, Pinnacle's non-discriminatory reason for termination is supported. Thus, Chernicoff's hearsay argument provides him no support.

Once a "defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Finding that Pinnacle has offered a legitimate, non-discriminatory reason for Chernicoff's termination, we turn next to Chernicoff's arguments that these reasons should be considered pretext.

First, Chernicoff argues that Pinnacle's reasons are fabricated because he was not apprised of many of the concerns that Pinnacle apparently had with his work performance or his attitude, and that there are no records of any concerns before his termination. (Doc. 22, at page 8). Second, Chernicoff argues that Williams' testimony, where many of the reasons for termination originate, is

subject to doubt and his reasons for terminating him were a front for his ulterior motive of pushing Chernicoff out of the practice. (Doc. 31, at page 19). In conjunction with that argument, Chernicoff argues a Cat's Paw theory to impute this ulterior motive to Pinnacle. The Court will address each of these arguments in turn. (*Id.*, at page 21).

In order to avoid summary judgment, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764. To meet this burden, the "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.*, at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992). To be sure, "this places a difficult burden on the plaintiff." (*Id.*).

Chernicoff has not met this burden. Chernicoff points to a lack of corroborating evidence of Pinnacle's concerns with him, but has admitted to certain actions that support Pinnacle's reasons for termination. Simply pointing to the lack of a paper trail outlining the employment concerns does not "demonstrate

such weaknesses" that a reasonable factfinder could find them "unworthy of credence." (*Id*.). The only direct evidence that Chernicoff points to in support of his contention that Pinnacle's reasons for termination were formulated *post hoc* is an email written by Williams to Kellis setting forth Chernicoff's work issues (Doc. 33, page 10), which Chernicoff argues was created after his termination in a suspicious manner. However, the email makes clear that it was written on September 21, 2012, four days before Chernicoff's termination. (*Id*.). Thus, this email cuts in favor of the legitimacy of Pinnacle's reasons for termination rather than in support of his argument of pretext.

Similarly, Chernicoff's attempt to discredit Williams as a source of establishing pretext fails. Chernicoff points to a licensing action in Virginia from 2007 that resulted in a reprimand for Williams and the fact that he is a recovering alcoholic to argue that any reasons offered by Williams for termination are pretext. (Doc. 31, page 6). Chernicoff then argues in a conclusory manner that Williams had ill will towards him and wanted to push him out of the practice. (*Id*., at page 19). This information may allow a jury to call into question Williams' testimony, but merely providing a reason for a jury to disbelieve Pinnacle's reason for termination is not enough to show pretext. While Chernicoff does not need to provide evidence to "directly contradict[] the defendant's proffered legitimate explanations," the Third Circuit has "reject[ed] out of hand" the contention "that

the plaintiff can avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations." *Fuentes*, 32 F.3d at 764. Further, Williams' testimony is not essential for Pinnacle, as Chernicoff himself has admitted in his deposition several actions that Pinnacle alleges formed the basis for his termination.

Chernicoff has not adduced evidence to show that Williams had a discriminatory motive towards him or that his discriminatory motive played any role in his termination. Chernicoff has pointed to no evidence which would suggest that he was terminated because of his age. He admits that nobody at Pinnacle ever mentioned his age during his employment or at his termination and he never made a complaint about age discrimination during his time with Pinnacle. (*Id.*). Chernicoff's ADEA claims rest exclusively on his own belief that he was fired for his age. Accordingly, Pinnacle's Motion for Summary Judgment shall be granted.

## IV.   CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion for Summary Judgment (Doc. 21) in its entirety.  A separate order shall issue in accordance with this ruling.